FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ALDEN BENALLY,

     Defendant-Appellant.

No. 07-2194

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:CR–05-1854-WJ)**

---

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE, LUCERO,** and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

     Defendant Alden Benally was convicted of abusive sexual contact with a child in violation of 18 U.S.C. §§ 2244(a), (c), and 18 U.S.C. § 2253, and was sentenced to 240 months' imprisonment. On appeal, he argues that the district court abused its discretion

by excluding the testimony of an expert witness on false confessions who would have provided support for his claim that his confession to FBI agents was untrue. He also contends his sentencing did not satisfy the procedural requirements of federal sentencing law. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 3742, and we affirm.

I.

Several months after meeting, Colleen Ann Yazzie began dating and living with Mr. Benally in Casamero Lake, New Mexico, within the borders of the Navajo nation. Mr. Benally is a member of the Navajo nation, which is a tribe recognized by the federal government.

After living with Ms. Yazzie for several years, Mr. Benally moved to Phoenix, Arizona in order to receive training as a radiological technician. Shortly after Mr. Benally left, Ms. Yazzie's niece, N.T., attended a presentation with her sixth grade class on sexual abuse. As part of the presentation, the students received a questionnaire related to sexual abuse and N.T.'s responses indicated she had been sexually abused. When subsequently questioned about her responses, N.T. implicated Mr. Benally as the perpetrator. The teacher then spoke with Ms. Yazzie's younger sister, W.T., who also indicated she had been sexually abused by Mr. Benally.

Tribal officials referred the allegations to the FBI. Two agents traveled to Phoenix and interviewed Mr. Benally for approximately an hour and a half in a patient examination room at Mr. Benally's workplace. The agents informed Mr. Benally they

2

were only there to investigate allegations he had sexually abused N.T. and W.T and that he was not under arrest. Mr. Benally agreed to speak to the agents. Mr. Benally initially denied touching either girl inappropriately, but confessed to the allegations later in the interview. At the conclusion of the meeting, he provided the agents with a written confession.

Mr. Benally disavowed his confession at trial, and claimed it was prompted by coercive tactics used by the FBI agents. He testified that the agents repeatedly insisted he was lying when he denied the charges and "would not take no for an answer." ROA, Vol. XXIII, Trial Tr. at 413-14. He also reported that one of the agents engaged in aggressive, leading questioning, and that at one point, the agent threatened to remove him from his workplace in handcuffs unless he cooperated. He indicated that the agents made him feel as if he could not leave the room unless he cooperated and confessed. One of the agents testified that they never threatened Mr. Benally, and did not make any promises to him. The agent claimed the only guidance he provided Mr. Benally in drafting the confession consisted of basic directions such as "put in there what happened" and "if you want, you can tell them you want to apologize." ROA, Vol. XXII, Trial Tr. at 68.

Prior to trial, Mr. Benally notified the government he planned to call Dr. Deborah Davis, a professor of psychology at the University of Nevada at Reno, as an expert witness on false confessions. Mr. Benally offered her as "an expert in the field of social psychology" and "the subjects of confession, interrogation techniques . . .[,] and the ability of those techniques to cause people to confess." ROA, Vol. I, Def.'s Br. Mot. in

3

Limine at 5. The government requested a hearing to determine whether she was qualified to testify as an expert under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1996). Mr. Benally offered Dr. Davis's testimony on two subjects: (1) whether false confessions occur; and (2) why people confess falsely. Dr. Davis had never examined Mr. Benally, and would not offer an opinion as to whether he confessed falsely.

Dr. Davis did not appear at the Daubert hearing. Instead, the court relied on documentary evidence related to Dr. Davis, and accepted as a proffer a transcript of her testimony in a similar case before a different judge on the same court. Included in the proffer was a PowerPoint presentation Dr. Davis used in the other case. After reviewing the transcript and the PowerPoint presentation, the district court ruled that Dr. Davis's testimony was inadmissible, concluding that it did not meet the standards for relevance or reliability required by Daubert. The case proceeded to trial, but ended in a mistrial when the jury failed to reach a unanimous verdict. A second trial resulted in Mr. Benally's conviction.

The presentence investigation report (PSR) that was prepared in Mr. Benally's case calculated an offense level of 44 and a criminal history of I, which would carry a sentence of life imprisonment under the Guidelines. In this case, however, Mr. Benally's offense of conviction carries a statutory maximum term of 240 months. See 18 U.S.C. §§ 2244(a)(c), 2246(3). Pursuant to U.S.S.G. § 5G1.1(a), if a statutory maximum sentence is less than the minimum of the applicable Guideline range, the statutory maximum

4

sentence shall constitute the recommended sentence under the Guidelines. As a result, Mr. Benally's actual Guideline sentence was 20 years of imprisonment, which the district court ultimately imposed after finding that term of imprisonment "reasonable."

## II.

Mr. Benally argues that the district court erred by excluding Dr. Davis's testimony on false confessions. He stresses that Dr. Davis would only have testified to the frequency of false confessions and the interrogation techniques known to cause them, and would not have offered an opinion as to whether Mr. Benally confessed falsely. He contends that the limited purpose of this testimony was to overcome the perception that sane people either do not confess falsely, or do so only rarely. He suggests that by presenting general testimony from Dr. Davis regarding the phenomenon of false confessions in tandem with his specific testimony regarding the conditions of his interrogation, his explanation for why he confessed falsely would be placed into a broader, more believable context.

We review de novo whether the district court correctly applied Daubert. We review the district court's ultimate decision to admit or deny the testimony for an abuse of discretion. Burlington Northern & Santa Fe Ry. v. Grant, 505 F.3d 1013, 1030 (10th Cir. 2007). Mr. Benally does not argue that the district court failed to employ the correct legal standard, which limits this court's review to the question of whether the trial court abused its discretion in refusing to admit Dr. Davis's testimony. We will therefore only reverse if we conclude that the district court's decision was "arbitrary, capricious, whimsical or

5

manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1079 (10th Cir. 2006).

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. When "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592 . "In performing this gatekeeper role, the judge must assess the reasoning and methodology underlying the expert's opinion, then determine whether it is scientifically valid and applicable to a particular set of facts." Burlington Northern, 505 F.3d at 1030. A trial judge conducting review under Daubert must seek to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. This principle "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (citation omitted). Scientifically reliable evidence and testimony may be excluded where it is not directly relevant to the particular matter disputed at trial, and would not therefore "assist the trier of fact as required by Rule 702." United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999).

The district court did not abuse its discretion by excluding Dr. Davis's testimony. This conclusion is well supported by our opinion in United States v. Adams, 271 F.3d

1236 (10th Cir. 2001). In <u>Adams</u>, we affirmed a district court's exclusion of a psychologist's expert testimony regarding the credibility of incriminating statements made by a defendant to police officers. <u>Id.</u> at 1244. The defendant in <u>Adams</u> argued that "the proffered testimony . . . showed Adams' neurocognitive impairment and dependent personality structure[,] and supports the possibility the statements he gave to the police were false." <u>Id.</u> (quotation omitted). While recognizing that a district court may not categorically exclude all expert testimony of this variety, we noted that "the credibility of witnesses is generally not an appropriate subject for expert testimony." <u>Id.</u> at 1244-45 (quotation omitted). We went on to identify three concerns associated with this type of testimony:

> First, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702. Also, a proposed expert's opinion that a witness is lying or telling the truth might be inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular outcome. Yet another rationale for exclusion is that the testimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403.

<u>Id.</u> at 1245 (quotations omitted).

Mr. Benally seeks to distinguish his case from <u>Adams</u> based on the fact that unlike the expert in <u>Adams</u>, Dr. Davis did not intend to provide an opinion as to whether the defendant before the court falsely confessed. By stressing this fact, Mr. Benally is responding to the concern expressed in <u>Adams</u> that "a proposed expert's opinion that a

7

witness is lying or telling the truth might be inadmissible . . . because the opinion exceeds the scope of the expert's specialized knowledge." Id. Mr. Benally's argument does not, however, address the other problems associated with this type of testimony that were identified in Adams.

First, Dr. Davis's testimony inevitably would "encroach[] upon the jury's vital and exclusive function to make credibility determinations." See id. While Mr. Benally emphasizes that Dr. Davis would not have opined as to whether she believed Mr. Benally confessed falsely, with or without the opinion, the import of her expert testimony would be the same: disregard the confession and credit the defendant's testimony that his confession was a lie. Testimony concerning credibility "is often excluded because it usurps a critical function of the jury and because it is not helpful to the jury, which is capable of making its own determination regarding credibility." United States v. Call, 129 F.3d 1402, 1406 (10th Cir. 1997).

In addition, the district court did not abuse its discretion by concluding that the prejudicial effect of Dr. Davis's testimony would substantially outweigh its probative value. See Fed. R. Evid. 403; see also Call, 129 F.3d at 1404-05 (10th Cir. 1997) (noting that "even if polygraph evidence should satisfy Rule 702, it still must survive the rigors of Rule 403"). First, with respect to the testimony's probative value, whatever relevance it had under Fed. R. Evid. 401 was minimal. Dr. Davis did not examine Mr. Benally, and was not going to specifically discuss him or the circumstances surrounding his confession in her testimony. She would only have testified generally about the conditions known to

8

cause false confessions, which would have included a discussion about the effects of conditions not at issue here, such as torture, in order to establish "the counterintuitive notion that false confessions do in fact occur." Aplt. Br. at 15. Even if we were to assume the limited relevance of this general testimony, we conclude that a district court could reasonably conclude that the prejudice to the prosecution that would result from permitting an expert to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue, substantially outweighs the testimony's minimal probative value.

Mr. Benally urges this court to follow the rationale of several decisions from other circuits reversing district court decisions to exclude expert testimony regarding a defendant's susceptibility to making a false confession. Our opinion in Adams recognized two of these opinions, United States v. Hall, 93 F.3d 1337 (7th Cir. 1996) and United States v. Shay, 57 F.3d 126 (1st Cir. 1995), and found that they stand only for the proposition that expert testimony regarding the voluntariness of a confession is admissible when the expert will testify to the existence of the defendant's identifiable medical disorder that raises a question regarding the defendant's cognitive voluntariness. As in Adams,

> [t]his case is readily distinguishable from Hall, 93 F.3d at 1341, where the defendant claimed that a personality disorder caused him to confess during interrogation and sign a statement in order to gain approval of his interrogators, and Shay, 57 F.3d at 129-30, where the defendant claimed that his confession was the product of a mental disorder characterized by an extreme form of pathological lying.

9

Adams, 271 F.3d at 1246. Mr. Benally's confession differs from the confessions in Hall and Shay because he does not identify a medical condition that contributed to his decision to confess. As for the third case cited by Mr. Benally, United States v. Belyea, 159 F. App'x 525 (4th Cir. 2005) (unpublished), it too is inapposite because it was decided principally on the basis of the district court's inadequate review of the expert's proffer. That is not the issue presented here.

The district court's decision to exclude Dr. Davis's testimony was not "arbitrary, capricious, whimsical or manifestly unreasonable." Champagne Metals, 458 F.3d at 1079. The concerns the district court expressed were legitimate and within the bounds of permissible choice, as reflected by prior rulings of this court.

### III.

Mr. Benally also contends that the district court erred "by imposing the statutory maximum sentence of twenty years sentence [sic] when it found only that such a sentence was reasonable, rather than because it constituted a sentence that [is] sufficient, but not greater than necessary, to accomplish the purposes of a sentence set forth in 18 U.S.C. § 3553(a)(2)." Aplt. Br. at 26. Mr. Benally did not object to this omission at trial, so this court may only review for plain error. United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007).

Sentencing courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). Mr. Benally notes that the district court only said the sentence was "reasonable," and

10

failed to mention whether his sentence complied with this language. Relying on the Supreme Court's recent decision in <u>Kimbrough v. United States</u>, – U.S. –, 128 S. Ct. 558 (2007), he argues that this principle is "not merely one factor among many; it is the 'overarching provision,' the very essence of a reasonable sentence." Aplt. Br. at 32 (quoting <u>Kimbrough</u>, 128 S. Ct. at 570).

A sentencing court must state under 18 U.S.C. § 3553(c) "the reasons for its imposition of the particular sentence." <u>United States v. Cereceres-Zavala</u>, 499 F.3d 1211, 1217 (10th Cir. 2007). However, "where 'a district court imposes a sentence falling within the range suggested by the Guidelines, Section 3553(c) requires the court to provide only a general statement of the "reasons for its imposition of the particular sentence".'" <u>Id.</u> (quoting <u>Ruiz-Terrazas</u>, 477 F.3d at 1199). "[T]his generalized statement need involve no ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to prove that it considered the various factors Congress instructed it to consider." <u>Ruiz-Terrazas</u>, 477 F.3d at 1202 (quotation omitted). We will only "step in and find error when the record gives us reason to think that our ordinary . . . presumption that the district judge knew and applied the law is misplaced." <u>Id.</u> at 1202.

The district court did not commit plain error in failing to state that Mr. Benally's sentence was "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." <u>See</u> 18 U.S.C. § 3553(a). Mr. Benally does not identify any authority holding that a trial court must enunciate this particular § 3553(a) factor in order

11

to satisfy its procedural responsibilities at sentencing.  <u>Kimbrough</u> does not require the district court to do any more than it did here.

IV.

The judgment of the district court is AFFIRMED.