FILED
United States Court of Appeals
Tenth Circuit

June 20, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA THOMAS SMITH,

    Defendant - Appellant.

No. 23-7029
(D.C. No. 6:21-CR-00333-BMJ-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT*
_____

Before **MATHESON**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

A jury convicted Joshua Thomas Smith of one count of aggravated sexual abuse in Indian Country for abusing his girlfriend's minor daughter, Jane Doe. At trial, the Government called Vicki Boan as an expert witness to testify about how and when a child might disclose sexual abuse. On appeal, Mr. Smith argues the court should have excluded Ms. Boan's testimony under Federal Rules of Evidence 702 and 403.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A. *Factual History*

When Jane Doe was 11 years old, she accused her mother's boyfriend, Mr. Smith, of sexually abusing her between five and ten times from December 2017 to March 2018. After disclosing the abuse, she participated in a forensic interview.  Mr. Smith consistently denied abusing Ms. Doe.

### B. *Procedural History*

The State of Oklahoma originally charged Mr. Smith and Ms. Doe testified about the alleged abuse at a preliminary hearing in state court.  But state prosecutors dismissed the case following *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).  A federal grand jury indicted Mr. Smith on one count of aggravated sexual abuse in Indian Country under 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151, and 1153.

### 1.  Pretrial Proceedings About Ms. Boan's Testimony

Before trial, the Government noticed its intent to call Ms. Boan as an expert on "the process of disclosure, delayed disclosure, and the stages of disclosure for persons who have been subjected to sexual abuse."  ROA, Vol. I at 25-26.  Ms. Boan had never met Ms. Doe and knew nothing about the facts of the case.  *See Id.* at 28; ROA, Vol. IV at 312-13.  The prosecution wished to use her testimony to provide the jury with general background on how child sexual abuse victims may disclose abuse.  The Government's notice did not mention Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which Ms. Boan discussed later in her trial testimony.

Mr. Smith moved in limine to exclude Ms. Boan's testimony under Rule 702, arguing it was irrelevant and would improperly vouch for Ms. Doe's credibility. He contended that Ms. Doe had already given a "plausible reason for delayed disclosure in this case," so Ms. Boan's expertise was not needed to explain Ms. Doe's anticipated testimony. ROA, Vol. I at 45. Mr. Smith also argued Ms. Boan's testimony should be excluded under Rule 403 because her "general lecture on child sexual abuse . . . would unfairly prejudice" him by widening the scope of the trial to "legal and societal questions" beyond his case. *Id.* at 46.

In response to the motion, the district court recited the Rule 702 standard that (1) an expert must be qualified by "knowledge, skill, experience, training, or education" to render an opinion and (2) the expert's opinion must be reliable and relevant. Suppl. ROA, Vol. III at 41 (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).

On Rule 702 relevance, the court said it could not determine until trial whether Ms. Boan's testimony would be relevant and provisionally granted Mr. Smith's motion to exclude Ms. Boan until then. It noted, however, that another district court had recently held that Ms. Boan's testimony about child sexual abuse was admissible under Rule 702.

On vouching under Rule 702, the court explained that as long as Ms. Boan did not comment on Ms. Doe's credibility or offer an opinion about whether Ms. Doe was sexually abused, she would not improperly vouch for Ms. Doe's credibility. It denied Mr. Smith's motion to exclude Ms. Boan's testimony as improper vouching.

The court said that even though Mr. Smith did not seem to challenge Ms. Boan's knowledge and experience, it found she was qualified to testify on the proffered subjects. Neither Mr. Smith nor the court addressed the reliability of Ms. Boan's testimony.

On Rule 403, the district court balanced the potential probative value of Ms. Boan's testimony against its potential prejudice to Mr. Smith and denied his motion subject to considering relevance objections at trial.

2. **Trial**

a. *Ms. Doe's testimony*

On direct examination, Ms. Doe testified about how Mr. Smith abused her, and she described her eventual disclosure of that abuse. On cross-examination, Mr. Smith questioned Ms. Doe about her alleged dislike of him and the timing of her disclosure of the abuse relative to instances when he had punished her. Mr. Smith pointed to numerous inconsistencies between Ms. Doe's trial testimony and statements she made in her forensic interview and at the state court preliminary hearing.

b. *Ms. Boan's testimony*

After Ms. Doe testified, the Government called Ms. Boan. Because the district court had previously deferred a ruling on whether Ms. Boan could testify until "'such time as the Court c[ould] deem [the proposed testimony] relevant,'" the Government asked whether the court now "deemed that her testimony would be beneficial in this matter and aid the jury." ROA, Vol. IV at 296 (quoting Suppl. ROA, Vol. III at 41). In response, Mr. Smith "renewed [his] motion" to exclude Ms. Boan based on lack of

4

relevance. *Id.* Without further analysis, the court "f[ou]nd her testimony to be beneficial" and allowed Ms. Boan to testify. *Id.* at 296-97.

Ms. Boan described her qualifications, *id.* at 297-305, including "study[ing] and be[ing] educated on" CSAAS and her experience in forensic interviewing, *id.* at 301. The Government asked that Ms. Boan be recognized "as an expert in the field of forensic interviews, child abuse and neglect[,] and disclosure dynamics." *Id.* at 305. Mr. Smith again "renew[ed] [his] motion" without further explanation. *Id.* The court overruled his objection and admitted Ms. Boan as an expert on "those topics." *Id.* at 305-06. Mr. Smith did not object further once Ms. Boan began her substantive testimony.

Ms. Boan then gave wide-ranging testimony about children's reactions to sexual abuse. She stated that she had never interviewed or met Ms. Doe, had not reviewed any evidence in the case, and knew none of the case's details. *Id.* at 312-13. Instead, she discussed general factors that may influence how and when a child might disclose sexual abuse.

Ms. Boan relied on CSAAS to explain these disclosure dynamics. *Id.* at 314. She said that CSAAS originated in a 1983 study by Dr. Roland Summit. He "observed the behaviors in children who had been sexually abused by a known person" and then "identified common behaviors or dynamics." *Id.* Since the 1980s, other researchers have re-examined and re-affirmed CSAAS as a relevant framework. *Id.* And Ms. Boan said that CSAAS recognizes five behavioral patterns common to abused children: "[s]ecrecy; helplessness; entrapment and accommodation; delayed or unconvincing disclosure; and recantation." *Id.*

Ms. Boan testified that CSAAS helps to "understand how children experience" and disclose abuse, *id.*; *see also id.* at 316; provides a "way of understanding how a child perceives and talks about the abuse," *id.* at 315; and can "recalibrate" expectations "about how children relate [to] sexual abuse," *id.*  For example, she noted that children may "say something a little bit different" about the abuse to different people, *id.* at 322, and disclose "differing details," *id.* at 323.  Finally, Ms. Boan clarified that CSAAS is "not meant to be a diagnostic tool or any sort of checklist for abuse."  *Id.* at 314.

On cross-examination, Mr. Smith focused his questioning on whether CSAAS could shed light on whether sexual abuse had actually occurred.  Ms. Boan agreed it could not, stating that CSAAS-identified patterns do not necessarily mean abuse had occurred.

## II.  **DISCUSSION**

### A.  *Admission of Ms. Boan's Testimony Under Rule 702*

Mr. Smith argues the district court did not act as a gatekeeper under Rule 702, and therefore legally erred, because it failed to (i) evaluate Ms. Boan's qualifications to testify about CSAAS or (ii) analyze whether CSAAS is reliable.  He also argues the court improperly applied Rule 702 and abused its discretion by allowing Ms. Boan to testify because (i) CSAAS is not relevant and (ii) Ms. Boan vouched for Ms. Doe's credibility.  We reject each of Mr. Smith's arguments.

6

1. **Legal Background**

    a. *Rule 702 and* Daubert

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[1]

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court recognized that Rule 702 imposes a "gatekeeping" function on district courts. *Id.* at 597. "When a party objects to proposed expert testimony, the court must adequately demonstrate by specific findings on the record that it has taken these gate-

---

[1] We have quoted Rule 702 as amended in 2023. If a federal rule is amended while a case is on appeal and the amendments "have no bearing on our analysis or the ultimate resolution of th[e] appeal," we "refer . . . to the language of the [amended] federal . . . rules," rather than the earlier version. *Yost v. Stout*, 607 F.3d 1239, 1242 n.5 (10th Cir. 2010).

keeping responsibilities seriously." *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1190 (10th Cir. 2014) (quotations omitted).

The court must "determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion," *Nacchio*, 555 F.3d at 1241 (quoting Fed. R. Evid. 702), and has "skill, experience, or knowledge in the particular field" at issue, *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (quotations omitted).

If the expert is qualified, the court must determine whether the expert's testimony "will help the trier of fact" and is therefore relevant under Rule 702(a). *See id.* at 1168. It also must determine whether the testimony is reliable under Rule 702(c) and (d) based on its "principles and methods" and their "application." *See id.*; *Nacchio*, 555 F.3d at 1241.

"When no [specific Rule 702] objection is raised, district courts are not required to make explicit on-the-record rulings" on the Rule 702/*Daubert* criteria. *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019); *see also id.* (holding appellant waived a challenge to the expert's reliability by challenging only the expert's qualifications in the district court).

b. *Appellate review*

We review the district court's decision to admit expert testimony in two steps. First, we "review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance." *United States v. Pehrson*, 65 F.4th 526, 541 (10th Cir. 2023) (quotations omitted). Performance of the

8

gatekeeping role requires the district court to "furnish enough of a record to permit a reviewing court to say with confidence that it properly applied the relevant law" and to "reply in some meaningful way to the *Daubert* concerns the objector has raised." *Storagecraft*, 744 F.3d at 1190 (quotations omitted). Second, "[w]e then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." *Pehrson*, 65 F.4th at 541 (quotations omitted); *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).

If the appellant did not make "a contemporaneous objection to the admission of testimony," we review for plain error. *United States v. Brooks*, 736 F.3d 921, 929-30 (10th Cir. 2013). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 930 (quotations omitted). "[F]ailure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument . . . not first presented to the district court." *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) (quotations omitted).

2. **Analysis**

a. *Legal standard and gatekeeper role*

The district court identified the correct Rule 702 and *Daubert* standards, citing *Nacchio*, 555 F.3d at 1241, and stating that the expert must be qualified and the testimony must be relevant and reliable. Suppl. ROA, Vol. III at 41. It then addressed Mr. Smith's relevance and vouching objections. *Id.* at 39, 41.

9

Mr. Smith argues the district court should have addressed Ms. Boan's qualifications—including whether she was qualified to testify about CSAAS. *See* Aplt. Br. at 20-27. But in district court, he never challenged Ms. Boan's qualifications, arguing only that "[t]he government has not carried its burden to establish that Ms. Boan's testimony is relevant." ROA, Vol. I at 43; *see also id.* at 43-46. When the court addressed his motion in limine, it noted that Mr. Smith had "not challenge[d] Ms. Boan's knowledge and experience," Suppl. ROA Vol. III at 41, and it then said she was "well-qualified." *Id.*[2] And he admits that when he objected in limine, CSAAS was not yet at issue. *See* Aplt. Br. at 21-23.

Mr. Smith also argues the district court should have addressed CSAAS's reliability. *See* Aplt. Br. at 27-37. But again, he never asked the district court to do so.

Because Mr. Smith forfeited his qualifications and reliability arguments in district court and fails to argue plain error on appeal, he has waived his challenge on these issues. *See, e.g.*, *Leffler*, 942 F.3d at 1196.

---

[2] Even if Mr. Smith had objected to Ms. Boan's qualifications, *see* Aplt. Br. at 24 n.4, by renewing his motion in limine at trial after she testified to her credentials, App., Vol. IV at 305-06, the district court did not abuse its discretion in finding Ms. Boan qualified. In its notice of intent, the Government included Ms. Boan's CV, which reflected her extensive work with child sex abuse victims. *See* ROA, Vol. I at 29-37. At trial, Ms. Boan described her qualifications, including that she had "studied and been educated on [CSAAS]," ROA, Vol. IV at 301, and had previously testified about CSAAS as an expert witness, *id.* at 304-05. Mr. Smith did not challenge any of this evidence supporting Ms. Boan's qualifications to testify as an expert.

The district court "properly applied the relevant law" and "repl[ied] in some meaningful way to the *Daubert* concerns the objector . . . raised." *Storagecraft*, 744 F.3d at 1190 (quotations omitted). It thus adequately performed its gatekeeper function.

b. *Application of Rule 702*

Mr. Smith argues the district court abused its discretion because it (i) erred in determining Ms. Boan's testimony was relevant and (ii) should have excluded Ms. Boan's testimony because it vouched for Ms. Doe's credibility. We disagree.

i. Relevance

1) Legal background – *United States v. Parson*, 84 F.4th 930 (10th Cir. 2023)

Under Rule 702(a), the expert must likely "help the trier of fact to understand the evidence or determine a fact in issue." In *Parson*, we held that expert testimony explaining "that it is not uncommon for child victims to delay disclosure; to disclose abuse in a piecemeal fashion; to underreport sexual abuse; and that several factors, both external and internal, may cause delayed reporting and underreporting" may be relevant in "criminal trials involving contested allegations of child sex abuse." 84 F.4th at 938. This evidence is relevant "because the average juror often lacks expertise on the characteristics of victims of child sex abuse, particularly in the process of disclosing such abuse." *Id.*

The defense in *Parson* sought to "discredit [the victim's] disclosures because of delayed reporting and inconsistencies." *Id.* We said that under those circumstances, generalized expert testimony about child sexual abuse disclosures would aid the jury, and

11

it "is simply wrong" to argue that generalized expert testimony about a child's disclosure of sexual abuse is "categorically inadmissible." *Id.*

### 2) Relevance of Ms. Boan's testimony

The district court did not abuse its discretion in finding Ms. Boan's testimony relevant. In *Parson*, we concluded that expert testimony like Ms. Boan's may help the trier of fact better understand how child sex abuse victims behave and disclose the abuse that they suffered. *Id.* General expert testimony "limited to describing the general process of disclosure, the different types of disclosures, and the reasons why disclosures may vary depending on internal and external factors . . . [is] appropriate and commonly accepted" in child sex-abuse cases. *Id.* at 939.

Ms. Boan's testimony was relevant for the same reason. Mr. Smith's defense theory was that Ms. Doe had fabricated the allegations against him. He argued her story was inconsistent, *see* ROA, Vol. IV at 541-46, and that the timing of her disclosure showed Ms. Doe had made up allegations of abuse only after he disciplined her, *see id.* at 540-41. The defense's attempt to challenge Ms. Doe's credibility by highlighting inconsistencies between her trial testimony and earlier statements "undoubtedly bears on the reasonableness of the district court's decision to admit [Ms. Boan]'s expert testimony." *Parson*, 84 F.4th at 939.

Mr. Smith's attempts to distinguish *Parson* are not persuasive.

First, he argues that *Parson* did not address CSAAS. Aplt. Br. at 29. But Ms. Boan used CSAAS to explain how children disclose sexual abuse, *see* ROA, Vol. IV

12

at 314, and the expert's testimony in *Parson* similarly addressed the "process of child-sex-abuse disclosures," 84 F.4th at 937.

Second, Mr. Smith tries to limit *Parson* because there the victim had recanted. Aplt. Br. at 29-30. Although Ms. Doe did not recant, she testified at trial to details that differed from her previous statements, and Mr. Smith impeached Ms. Doe with those inconsistences. As in *Parson*, Ms. Boan's testimony was therefore helpful to the jury. 84 F.4th at 938.

Third, Mr. Smith contends that we upheld admission of the expert's testimony in *Parson* because the defendant had retained his own expert "to testify that the forensic interview process made [the *Parson* victim's] testimony unreliable." Aplt. Br. at 29-30. But at trial, Mr. Smith challenged Ms. Doe's initial disclosure of the sexual abuse, making Ms. Boan's expert testimony helpful to the jury.

Fourth, Mr. Smith argues the *Parson* expert testimony was more relevant because the victim was younger. Aplt. Br. at 30. But our holding in *Parson* did not turn on the victim's age, *see* 84 F.4th at 937-39, and even if the expert testimony was more probative in *Parson*, Ms. Boan's testimony was still relevant here.

## ii. Vouching

### 1) Legal background – Expert vouching

"In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702." *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (en banc)

13

(quotations omitted).  Because an expert's improper vouching testimony "does not assist the trier of fact," it is considered irrelevant under Rule 702(a).  *Id.* (quotations omitted).[3] We review for abuse of discretion.  *See Parson*, 84 F.4th at 937.

In *Parson*, we emphasized that generalized expert "testimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility of an alleged victim."  *Id.* at 938.  We held the expert testimony was not vouching because it was "helpful to the jury in the context of th[at] particular case."  *Id.* An expert cannot "explicitly comment[] on the credibility of the witnesses," but when the expert does "not opine about [the victim]'s credibility or about whether a crime had been committed," general testimony about the process of child sex-abuse disclosure may be permitted.  *Id.* at 939.

As we noted in *Parson*, other courts also have found that a child sex-abuse expert's testimony about disclosure may "rehabilitate[] (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony."  *Id.* (citation omitted).

---

[3] For expert witnesses, courts assess vouching under Rule 702.  *See United States v. Jones*, 74 F.4th 1065, 1068 (10th Cir. 2023).

For lay witnesses, vouching is a Rule 608 issue.  *Id.*  Under Rule 608 "a lay witness may . . . support another witness's credibility 'by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character . . . after the witness's character for truthfulness has been attacked.'"  *Id.* (second alteration in original) (quoting Fed. R. Evid. 608(a)).

2)  No vouching by Ms. Boan

Mr. Smith argues that Ms. Boan's testimony should have been excluded because it vouched for Ms. Doe's credibility.  Aplt. Br. at 38-40.  *Parson* forecloses Mr. Smith's argument.  As in *Parson*, Ms. Boan's general expert testimony was "helpful to the jury in the context of this particular case."  84 F.4th at 938.  She explained why Ms. Doe may have delayed reporting and why her testimony was inconsistent.  Nor did Ms. Boan explicitly comment on Ms. Doe's credibility or whether she believed Ms. Doe's allegations of abuse.  Under these circumstances, and in light of *Parson*, the district court did not abuse its discretion in allowing Ms. Boan to testify.[4]

### B. *Admissibility of Ms. Boan's Testimony Under Rule 403*

1.  **Legal Background**

   a.  *Rule 403*

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

---

[4] Even if an expert does not expressly comment on another witness's credibility. the expert's testimony could still improperly vouch for that witness.  *See, e.g.*, *United States v. Benally*, 541 F.3d 990, 993-96 (10th Cir. 2008).  In *Benally*, we held the district court did not abuse its discretion by excluding an expert's testimony for vouching, even when that expert "would not have opined" directly on the witness's credibility, because "the import of her expert testimony would [have] be[en] the same:  . . . [to] credit the defendant's testimony."  541 F.3d at 995.

Mr. Smith's reliance on *Benally* is misplaced.  *See* Aplt. Reply Br. at 1-7.  Although the district court in *Benally* did not abuse its discretion in *excluding* the expert's testimony, the district court in *Parson* did not abuse its discretion by *allowing* the child sex abuse expert to testify, nor did the district court here abuse its discretion by allowing Ms. Boan to testify.

following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

"[U]nfair prejudice" means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quotations omitted).  Unfair prejudice results when "some concededly relevant evidence . . . lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The district court has "broad discretion" to "[a]ssess[] the probative value of the proffered evidence[] and weigh[] any factors counseling against admissibility . . . under Rules 401 and 403."  *United States v. Hay*, 95 F. 4th 1304, 1319 (10th Cir. 2024) (quotations omitted).

b.  *Preservation through a motion in limine*

"A pretrial motion in limine to exclude evidence will not always preserve an objection for appellate review."  *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993).  "[A] motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge."  *Id.*

c.  *Standard of review*

"We review for abuse of discretion a properly-preserved Rule 403 objection to the district court's decision to admit evidence."  *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013).  "Our abuse of discretion review affords the district court

16

considerable discretion in performing the Rule 403 balancing test because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues." *Id.* (quotations omitted). We "will not reverse the district court's decision absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997) (quotations omitted).

"Absent a timely and specific objection, this court reviews [Rule 403] challenges for plain error." *United States v. McGlothin*, 705 F.3d 1254, 1260 (10th Cir. 2013).

2. **Additional Procedural History**

Mr. Smith argued in his motion in limine that even if Ms. Boan's testimony was relevant, it should be excluded under Rule 403 because it would "unfairly prejudice" him and "create[] a distraction" by "communicat[ing] to the jury it is deciding legal and societal questions rather than the specific facts of Mr. Smith's case." ROA, Vol. I at 46.[5]

In its pretrial ruling, the district court denied Mr. Smith's motion "to the extent it s[ought] to completely exclude Ms. Boan's testimony." Suppl. ROA, Vol. III at 40. It said that Ms. Boan's testimony would add context and specialized knowledge to help the jury understand Ms. Doe's disclosure process and that any prejudice from such testimony would not substantially outweigh the probative value of Ms. Boan's testimony. The court

---

[5] Mr. Smith also argued Ms. Boan's testimony would be cumulative, ROA, Vol. I at 47, but he does not raise this issue on appeal, *see* Aplt. Br. at 43-48.

17

noted that determinations about whether "Ms. Boan's testimony should be narrowed" based on relevance would be made at trial as evidence was presented. *Id.*

At trial, after Ms. Boan testified about how many forensic interviews she had conducted, Mr. Smith "renew[ed his] motion." ROA, Vol. VI at 299, 305. After that, Mr. Smith did not object again to Ms. Boan's testimony on Rule 403 grounds.

3. **Analysis**

On appeal, Mr. Smith argues Ms. Boan's testimony should have been excluded under Rule 403 because it:

- was of limited relevance, Aplt. Br. at 45;

- was confusing because it showed only that there is "no typical way children respond to sexual abuse," *id.* at 44 (quotations omitted), and would have left the jury unsure about how to use the testimony, Aplt. Reply Br. at 13; and

- was unfairly prejudicial because it "communicated to the jury that child sexual abuse was a pervasive and widespread problem that extended beyond the evidence *in this case*," Aplt. Br. at 46; Aplt. Reply Br. at 11-12, and because Ms. Boan's reliance on CSAAS made the jury think she was more qualified than she was, Aplt. Reply Br. at 11-12.

In his motion in limine, Mr. Smith argued only that Ms. Boan's testimony would broaden the scope of his trial to general societal issues.

a. *Preserved Rule 403 argument*

The district court did not abuse its discretion when it denied Mr. Smith's Rule 403 motion in limine or overruled his objection after Ms. Boan testified about her credentials.

18

First, for the reasons previously addressed in our discussion of Rule 702 relevance, Ms. Boan's testimony was probative.[6]

Second, Mr. Smith contends that Ms. Boan's testimony about widespread child sexual abuse was unfairly prejudicial. But he cites only Ms. Boan's discussion of her credentials, including her having conducted thousands of forensic interviews of children who were allegedly abused. *See* Aplt. Br. at 46 (citing ROA, Vol. IV at 299). Ms. Boan explained her expertise and provided background for her later testimony. The court could reasonably conclude that this testimony was not unfairly prejudicial. *See United States v. Duncan*, 766 F. App'x 604, 609 (10th Cir. 2019) (unpublished) (cited for persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1) (no abuse of discretion in finding information that "merely set a background for" a witness's testimony was not unfairly prejudicial). Its decision to allow Ms. Boan's testimony was not "arbitrary, capricious, whimsical or manifestly unreasonable" or clearly outside "the bounds of permissible choice in the circumstances." *Parson*, 84 F.4th at 937-38 (quotations omitted).

b. *Unpreserved Rule 403 arguments*

Mr. Smith otherwise failed to preserve his Rule 403 challenges. He did not object at trial once Ms. Boan began her expert testimony. As he notes, the district court made its only Rule 403 determination "prior to hearing evidence," *see* Aplt. Br. at 44, when CSAAS had not yet been discussed and the scope of Ms. Boan's testimony was unclear.

---

[6] We have suggested that "general" expert testimony about false confessions would have "minimal probative value." *Benally*, 541 F.3d 990 at 995. But *Parson* addressed the probative value of general expert testimony on child sex abuse disclosure.

And he does not argue plain error on appeal. *See id.* at 43-48. That said, the Government does not raise this preservation issue on appeal and instead addresses Mr. Smith's Rule 403 arguments on the merits. *See* Aplee. Br. at 36-39.

But even on the merits, Mr. Smith's arguments are not persuasive. First, Ms. Boan's testimony limited any potential for confusion by explaining that children react differently to abuse and make different choices about whether and when to disclose and to whom. Second, Ms. Boan's reliance on CSAAS did not create unfair prejudice. Her testimony drew on her own extensive experience conducting forensic interviews with child sex abuse victims. ROA, Vol. IV at 319-32. She also explained that CSAAS is not a diagnostic tool, cannot prove sexual abuse, and cannot prove whether an alleged victim was lying. *Id.* at 344-45. The district court acted within its discretion by allowing this testimony.

## III. **CONCLUSION**

The district court properly performed its Rule 702 gatekeeping role and did not abuse its discretion under either Rule 702 or Rule 403 by admitting Ms. Boan's expert testimony. We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge