**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERENCE B. TEKOH, | No. 18-56414 |
| *Plaintiff-Appellant*, | D.C. No. 2:16-cv-07297-GW-SK |
| v. | |
| COUNTY OF LOS ANGELES; DENNIS STANGELAND, Sergeant; CARLOS VEGA, Deputy, | ORDER |
| *Defendants-Appellees*, and | |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DOES, 1 to 10, | |
| *Defendants*. | |

Filed January 25, 2024

Before: Mary H. Murguia, Chief Judge, and Kim McLane Wardlaw and Eric D. Miller, Circuit Judges.

Order;
Concurrence by Judge Wardlaw;
Dissent by Judge Collins

# SUMMARY[*]

## Civil Rights/Coerced Confessions

The panel denied a petition for panel rehearing and a petition for rehearing en banc in a 42 U.S.C. § 1983 action, in which, on remand from the United States Supreme Court, the panel reversed the district court's judgment on a jury verdict for defendants and remanded for a new trial on plaintiff's Fifth Amendment claim that his confession in his criminal case was coerced.

Concurring in the denial of rehearing en banc, Judge Wardlaw, joined by Chief Judge Murguia and Judge Gould, wrote that the court correctly decided not to rehear this case. After the Supreme Court clarified its prior case law to hold that a *Miranda* violation alone does not provide a basis for § 1983 relief, the panel, reaching the issue for the first time on remand from the Supreme Court, held that the district court misapplied Federal Rule of Evidence 702 and therefore abused its discretion in excluding plaintiff's expert testimony on coerced confessions. Given the limited nature of the panel's decision—addressing for the first time in plaintiff's appeal the propriety of a ruling on a single evidentiary issue applying only to the facts of this case—the court was correct to avoid a wasteful use of en banc resources.

Dissenting from the denial of rehearing en banc, Judge Collins, joined by Judges Callahan, Ikuta, Bennett, R. Nelson, Bade, Lee, Bress, Bumatay and VanDyke, wrote

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that in holding that the mere use of common confession techniques triggers a need to admit expert testimony, the panel majority's decision (1) contravenes this Circuit's caselaw concerning the deference afforded to district judges on evidentiary questions as well as Circuit caselaw supporting the exclusion of expert testimony offered to bolster credibility; (2) could be read as effectively creating a *per se* rule requiring the admission of such testimony in all cases alleging a coerced confession; and (3) creates a split of authority.

## ORDER

Chief Judge Murguia and Judge Wardlaw voted to deny the petition for panel rehearing and the petition for rehearing en banc. Judge Miller voted to grant the petition for panel rehearing and the petition for rehearing en banc. The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(a).

The petition for panel rehearing and the petition for rehearing en banc (Dkt. 82) are **DENIED**.

**IT IS SO ORDERED**.

WARDLAW, Circuit Judge, with whom MURGUIA, Chief Judge, and GOULD, Circuit Judge, join, concurring in the denial of rehearing en banc:

The court today declines to rehear en banc an evidentiary ruling a three-judge panel issued on remand from the Supreme Court in *Vega v. Tekoh*, 597 U.S. 134 (2022). The panel had not reached this evidentiary issue in its prior decision that the Supreme Court elected to take up. In that decision, the panel unanimously held based on its understanding of then-existing Supreme Court precedent that an officer's use of an un-*Mirandized* statement could serve as a basis for a 42 U.S.C. § 1983 claim. *See Tekoh v. County of Los Angeles*, 985 F.3d 713 (9th Cir. 2021) ("*Tekoh I*"), *rev'd sub nom. Vega v. Tekoh*, 597 U.S. 134 (2022). Deputy Vega appealed and the Supreme Court clarified its prior caselaw to hold that a *Miranda* violation alone does not provide a basis for a § 1983 claim. *See Vega*, 597 U.S. at 152.

On remand the panel reached for the first time Tekoh's argument that the district court abused its discretion in excluding Tekoh's expert testimony at trial. The panel majority held, in an originally unpublished disposition, that the district court did so by misapplying Rule 702. *See Tekoh v. County of Los Angeles*, 75 F.4th 1264 (9th Cir. 2023) ("*Tekoh II*"). That decision was correct, and I join our court's decision to not rehear the case en banc. I write to explain why this is the correct result.

## I.

### A.

Los Angeles County criminally prosecuted Terence Tekoh twice, both times relying on a written confession that

Tekoh has claimed was coerced and false throughout his now decade-long journey through our state and federal judicial systems. After the discovery of new evidence during his first criminal trial, the court granted the parties' joint motion to declare a mistrial. During the second criminal trial some months later, the state trial court admitted the testimony of Tekoh's expert on false and coerced confessions, Dr. Blandón-Gitlin. The jury acquitted Tekoh.

After he was acquitted, Tekoh filed a civil suit against Deputy Vega under 42 U.S.C. § 1983 for, among other claims, coercing an incriminating statement from Tekoh and using it in a police report in violation of Tekoh's Fifth Amendment right against self-incrimination. *See Stoot v. City of Everett*, 582 F.3d 910, 922–26 (9th Cir. 2009). Over the strenuous and repeated objections of Tekoh's counsel, the district court excluded the proffered testimony of Tekoh's expert, Dr. Blandón-Gitlin, who would have testified that the interrogation practices Tekoh alleges Deputy Vega used are associated with coerced confessions, and that Tekoh's written confession contained hallmark signs of coercion. While the parties did not dispute that Dr. Blandón-Gitlin's testimony was based upon sufficient data or that her conclusions were the product of reliable principles and methods, the district court determined that Dr. Blandón-Gitlin's testimony would not be helpful under Federal Rule of Evidence 702 because if the jury credited Tekoh's account of his interrogation, it would "obviously" find Deputy Vega liable for coercion. The district court further found that Dr. Blandón-Gitlin's testimony, which would have applied her expert knowledge to the facts as Tekoh claimed they occurred, would have amounted to improper buttressing of Tekoh's testimony. Without the aid

of expert testimony on coerced confessions, the jury returned a verdict for Deputy Vega.

Tekoh moved for a new trial, which the district court granted in part, based on its failure to properly instruct the jury on the Fifth Amendment deprivation claim. At the second civil trial, the district court again excluded Dr. Blandón-Gitlin's testimony on Rule 702 grounds, reasoning that "[i]f one believes Mr. Tekoh, there pretty much is sufficient evidence that the interrogation was coercive" and again expressing the court's concern that the testimony would amount to improper buttressing. Again without the aid of any expert testimony on coerced confessions, the jury found Deputy Vega not liable.

On appeal, the three-judge panel unanimously remanded for a new trial, reaching only the question—no longer at issue—of whether § 1983 provides a cause of action against an officer who uses an un-*Mirandized* statement against a defendant in a criminal proceeding, as it was then unnecessary to reach the evidentiary issue. *See Tekoh I*, 985 F.3d at 726. Deputy Vega appealed the panel's decision and the Supreme Court reversed and remanded, holding that a *Miranda* violation, standing alone, does not provide a basis for a § 1983 claim. *See Vega*, 597 U.S. at 152. The Court did not reach any other issue in the case.

### B.

On remand from the Supreme Court, the panel reached for the first time Tekoh's separate and only remaining claim on appeal: whether the district court abused its discretion in excluding Dr. Blandón-Gitlin's testimony under Rule 702. Because the district court ignored Tekoh's arguments that the expert would help the jury understand issues beyond the ken of common knowledge and mischaracterized the

proffered testimony as improper witness bolstering, a majority of the panel held that the district court misapplied Rule 702 and abused its discretion in so doing. *See Tekoh II*, 75 F.4th at 1266.

Importantly, both the majority and the dissent agreed that the disposition appropriately should be filed as an unpublished memorandum disposition because the decision did not establish, alter, modify, or clarify a rule of federal law; did not call attention to a rule of law that appears to have been generally overlooked; did not criticize existing law; and did not involve a legal or factual issue of unique interest or substantial public interest. *See* Cir. R. 36-2 ("Criteria for Publication"); Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

The panel later designated the already-filed memorandum disposition for publication pursuant to Circuit Rule 36-2(f). That rule, which states that a disposition "shall be" published "following a reversal or remand by the United States Supreme Court," has long been honored in the breach. For decades, our court has tended not to publish dispositions following remand from the Supreme Court where the only issues remaining after remand are entirely separate from the issues addressed in the Supreme Court's decision (as here),[1]

---

[1] *See, e.g.*, *Empire Health Found. for Valley Hosp. Med. Ctr. v. Azar*, No. 18-35845, 2022 WL 17411382, at *1–2 (9th Cir. Dec. 5, 2022) (addressing the litigant's "remaining challenge" in a memorandum disposition following reversal and remand by the Supreme Court); *Lambert v. Nutraceutical Corp.*, 783 F. App'x 720, 721–22 (9th Cir. Aug. 27, 2019) (same); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 584 F. App'x 653, 654–56 (9th Cir. Aug. 22, 2014) (same); *United States v. Arvizu*, 32 F. App'x 873, 873–74 (9th Cir. Mar. 21, 2002) (same);

or where the Supreme Court remands with instructions to apply a Supreme Court decision affecting the case.**2**

---

*Bartholomew v. Wood*, 96 F.3d 1451 (Table) (9th Cir. Aug. 29, 1996) (same); *United States v. Ramirez*, 163 F.3d 608, 608 (Table) (9th Cir. Sept. 3, 1998) (disposing of the issue the Supreme Court addressed in a published disposition, but "tak[ing] up [the defendant's] alternate ground for affirming the district court[]" in a memorandum disposition); *see also Ulleseit v. Bayer Healthcare Pharms., Inc.*, Nos. 19-15778, 19-15782, 2021 WL 6139816, at *1 (9th Cir. Dec. 29, 2021) (addressing the "remaining ground" for relief following vacatur and remand by the Supreme Court); *Kayer v. Shinn*, 841 F. App'x 34, 35 (9th Cir. Mar. 25, 2021) (same); *Mena v. City of Simi Valley*, 156 F. App'x 24, 26 (9th Cir. Nov. 23, 2005) (same); *United States v. Verdugo-Urquidez*, 29 F.3d 637 (Table) (9th Cir. June 22, 1994) (same).

2 *See, e.g.*, *FTC v. Publishers Bus. Servs., Inc.*, 849 F. App'x 700, 700–02 (9th Cir. June 10, 2021); *United States v. Johnson*, 833 F. App'x 665, 666–68 (9th Cir. Oct. 28, 2020); *United States v. Poff*, 781 F. App'x 593, 593–95 (9th Cir. July 12, 2019); *E.F. ex rel. Fulsang v. Newport Mesa Unified Sch. Dist.*, 726 F. App'x 535, 536–38 (9th Cir. Feb. 14, 2018); *Castillo v. Sessions*, 743 F. App'x 818, 819–20 (9th Cir. Aug. 3, 2018); *Slater v. Sullivan*, 447 F. App'x 759, 759–60 (9th Cir. July 19, 2011); *United States v. Quinones*, 135 F. App'x 64, 65–66 (9th Cir. June 14, 2005); *United States v. Tolentino*, 135 F. App'x 36, 37–39 (9th Cir. June 8, 2005); *United States v. Tate*, 133 F. App'x 447, 448–49 (9th Cir. June 7, 2005); *see also Peterson on behalf of L.P. v. Lewis County*, 697 F. App'x 490, 491–92 (9th Cir. Sept. 22, 2017); *Herson v. City of Richmond*, 631 F. App'x 472, 473–74 (9th Cir. Jan. 22, 2016); *Johnson v. Finn*, 468 F. App'x 680, 682–85 (9th Cir. Feb. 10, 2012); *Parra Camacho v. Holder*, 478 F. App'x 431, 432 (9th Cir. July 11, 2012); *Valdovinos v. McGrath*, 423 F. App'x 720, 721–24 (9th Cir. Mar. 22, 2011); *United States v. Gonzalez*, 450 F. App'x 662, 663 (9th Cir. Sept. 27, 2011); *Lehman v. Robinson*, 346 F. App'x 188, 188 (9th Cir. Sept. 16, 2009); *United States v. Labra-Valladares*, 220 F. App'x 606, 607 (9th Cir. Feb. 9, 2007); *Earl X v. Morrow*, 156 F. App'x 1, 1–2 (9th Cir. Nov. 15, 2005); *United States v. Moreno*, 125 F. App'x 801, 801–02 (9th Cir. Mar. 3, 2005); *United States v. Magana*, 60 F. App'x 3, 3 (9th Cir. Jan. 13, 2003); *Brown v. Mayle*, 66 F. App'x 136, 137 (9th Cir. June 6, 2003); *United States v. Castro*, 35 F. App'x 553, 553–54 (9th Cir. May

Nevertheless, the panel designated the previously-filed memorandum disposition for publication exactly as written—without elaborating upon the facts or law that would fully constitute a true opinion.

After the disposition was published, the en banc call failed.  *See* Fed. R. App. P. 35(a) (en banc rehearing will not be ordered unless it is "necessary to secure or maintain the uniformity of the court's decisions" or involves a question of "exceptional importance"); Cir. R. 35-1.  The panel majority's ruling on a single evidentiary question narrowly based on the circumstances of Tekoh's case does not meet this criteria.

## II.

### A.

Yet the dissent maintains that our court should have reheard this case en banc.  The dissent both misstates the panel majority's holding and attacks the disposition based on language the dissent concedes it does not contain.

Most notably, the dissent erroneously claims that the panel majority's decision "hold[s] that the district court was *required* to admit the sort of testimony at issue here."  Of course, the decision does nothing of the sort.  The dissent appears to walk back this mischaracterization when it asserts that the disposition "*could* be read as *effectively* requiring the admission of such coerced-confession expert testimony . . . ." (emphases added and omitted).  But on either count, the dissent is wrong.  As we explain below, the panel majority reversed the district court not because it was

---

20, 2002); *United States v. X-Citement Video, Inc.*, 77 F.3d 491, 491 (Table) (9th Cir. Jan. 5, 1996); *Lastimosa v. Hughes Aircraft Co.*, 878 F.2d 386, 386 (Table) (9th Cir. June 22, 1989).

"*required*" to admit expert testimony on coerced confessions—an absurd proposition—but because the district court fundamentally misapplied Rule 702.

Had the district court engaged in a proper analysis under Rule 702, it might have excluded some or even all of Tekoh's proffered expert testimony without abusing its discretion. Certainly, the panel majority did not hold that expert testimony that satisfies Rule 702 will always satisfy Rule 403. Nor did the panel majority hold that expert testimony could be admitted under Rule 702 if it were not based upon sufficient data or if the expert's conclusions were not the product of reliable principles and methods—neither of which was at issue in this case. *Cf., e.g.*, *United States v. Hayat*, 710 F.3d 875, 903 (9th Cir. 2013) (holding that the district court did not abuse its discretion in excluding the testimony of an expert who did not demonstrate "particular expertise in the field of false confessions"). Rather, the panel majority's decision, which was limited to the unique facts of Tekoh's case, preserved the discretion of the district courts to determine whether to admit or exclude expert testimony on coerced confessions in whole or in part. Any assertion to the contrary is flatly wrong.

## B.

Turning to the narrow question in Tekoh's case, in the civil trial against Deputy Vega, the jury was essentially asked to evaluate two separate but related questions. First, whether Tekoh was credible—that is, which of Tekoh's or Vega's conflicting version of events was true. Second, if Tekoh was deemed credible, whether Vega's actions were unconstitutionally coercive. In its ruling excluding Dr. Blandón-Gitlin's testimony, the district court collapsed these two questions, improperly making its own finding of fact

that if anyone believed Tekoh's version of events, they would necessarily find that Tekoh's confession amounted to coercion in violation of the Fifth Amendment.  The district court's erroneous finding of fact ignored a host of circumstances in which Tekoh's testimony would not be sufficient alone to satisfy his burden of proof on coercion.  It ignored the possibility that the jury could find Tekoh credible but not find that Deputy Vega's conduct amounted to coercion.  And it ignored the possibility that the jury could find Tekoh only *partially* credible—that Deputy Vega used racial epithets but never put his hand on his gun or threatened Tekoh with deportation, for example, such that the isolated conduct did not amount to coercion.[3]

In each of these scenarios, Dr. Blandón-Gitlin's testimony would have been critical for the jury to "understand the evidence" and determine whether Tekoh met his burden to prove by a preponderance of the evidence that his confession was coerced in violation of the Fifth Amendment.  Fed. R. Evid. 702(a).  By excluding the expert testimony, the district court failed to understand the relationship between the percipient witnesses' testimony as to the circumstances of the interrogation and the expert testimony, which is relevant to how those facts may or may not satisfy the elements of the claim of coercion.  In effect,

---

[3] Evidently failing to recognize these possibilities, the district court at one point offered to instruct the jury that if the jury agreed with Tekoh's version of events, coercion was established as a matter of law.  Of course the district court never so instructed the jury.  But the fact that it offered to do so reflects the mistaken premise on which it based its evidentiary ruling: the erroneous belief that the jury would credit either all or none of Tekoh's account and the assumption, made without the analysis that Rule 702 requires, that the jury would necessarily find coercion established if it credited Tekoh's account.

it held that the *only* evidence it would permit Tekoh to offer regarding both the alleged circumstances of the interrogation and its allegedly coercive nature was Tekoh's subjective experience against the word of a law enforcement deputy.

In objecting to the district court's ruling, Tekoh's counsel repeatedly argued that the expert testimony would help the jury understand what is otherwise a counterintuitive fact: that certain interrogation techniques, in particular circumstances, can coercively elicit false confessions. Indeed, Tekoh had a valid argument to make that Dr. Blandón-Gitlin's testimony, which had already been accepted in Tekoh's criminal trial as well as dozens of other cases, was both specialized and relevant under Rule 702. As "many courts" in "hundreds" of cases have long acknowledged, false confessions are contrary to the prolific lay understanding that people do not confess to crimes unless they are guilty. *United States v. Hayat*, 2017 WL 6728639, at *10, *12 (E.D. Cal. Dec. 27, 2017). Our society has long abided by this deeply rooted notion, evidenced by the Supreme Court's statement more than 130 years ago that "one who is innocent will not imperil his safety or prejudice his interests by an untrue statement." *Hopt v. People*, 110 U.S. 574, 585 (1884). It continues to permeate our culture at such a fundamental level that we have codified it in our rules of evidence. *See* Fed. R. Evid. 804(b)(3) (declarations against interest are excepted from the rule against hearsay); *Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (recognizing that rational jurors attach credibility to a defendant's confession because an innocent defendant would not admit guilt).

Given the longstanding lay beliefs related to confessions against interest, it would be "naïve[ to] assume[] that a jury would be easily persuaded that an innocent person would

confess to a crime they did not commit by the confessor's testimony [recanting the confession] alone." *Lunbery v. Hornbeak*, 605 F.3d 754, 765 (9th Cir. 2010) (Hawkins, J., concurring). Here, the district court made this very assumption based on its no doubt extensive experience with confessions, coerced or not. In so doing, the district court substituted its background and specialized knowledge for those of the jurors, ducking the analysis Rule 702 requires.

The district court further erred in concluding that Dr. Blandón-Gitlin's expert testimony would amount to improper witness buttressing. In the criminal trial predating Tekoh's civil suit, the state trial court admitted Dr. Blandón-Gitlin's testimony without any concerns of improper buttressing. For good reason: her testimony provided expert analysis on certain features of Tekoh's written statement and information on the coercive effects of the types of conduct in which Deputy Vega allegedly engaged during the interrogation. That Dr. Blandón-Gitlin would limit her testimony on coercive interrogation techniques to only those techniques Tekoh claimed Deputy Vega used supports our conclusion that the expert was not bolstering Tekoh's credibility. *Cf. United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) (holding it was proper to exclude expert testimony on "the effects of [interrogation] conditions not at issue here, such as torture").

If the jury had found Tekoh not credible, it would have easily discounted Dr. Blandón-Gitlin's testimony as irrelevant. But—and this is the crucial point—if the jury did find Tekoh credible, it could *still* have found that Tekoh did not satisfy the burden of proving the elements of his coercion claim. Dr. Blandón-Gitlin's testimony was helpful because it went to the facts at the heart of Tekoh's legal claim, not to his credibility.

Moreover, even assuming the district court's concerns were valid, those concerns could have been properly addressed through Rule 403 limitations on Dr. Blandón-Gitlin's testimony and further mitigated through proper direct- and cross-examination. *See United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) (noting that, even if expert testimony on false confessions satisfies Rule 702, "the district court may still use the normal controls on scope of testimony and relevance that are available to it"). The district court was free to consider limitations on the scope of Dr. Blandón-Gitlin's testimony outside of Rule 702 but it simply refused to do so, even after Tekoh's counsel repeatedly offered to redact and exclude portions of the report with which the district court had expressed concerns.[4]

## III.

As noted above, had the district court engaged in a proper analysis under Rule 702 or Rule 403, it might have

---

[4] The dissent also argues that we should have reheard *Tekoh II* en banc because the panel majority's decision "creates a split with the Tenth Circuit's decision in *United States v. Benally*, 541 F.3d 990 (10th Cir. 2008)." That case, which arose in the criminal context, did not involve a § 1983 coercion claim. *See* 541 F.3d at 992. The Tenth Circuit held that the proffered expert testimony, which concerned false confessions generally and not coercion specifically, was not relevant because the expert in *Benally*, unlike Dr. Blandón-Gitlin, "was not going to specifically discuss [Benally] or the circumstances surrounding his confession in her testimony." *Id.* at 996. Instead, she was going to testify "about the effects of conditions not at issue [in Benally's case], such as torture." *Id.* Based on the minimal probative value of *that* expert's testimony, the Tenth Circuit held that even if the testimony were admissible under Rule 702 it was inadmissible under Rule 403. In short, *Benally* involved distinct factual and legal circumstances and distinguishable expert testimony. It therefore does not conflict, much less "directly conflict," with *Tekoh II*. Cir. R. 35-1.

excluded some or even all of Tekoh's proffered expert testimony. Its failure to do so amounted to an abuse of discretion. Given the limited nature of our decision—addressing for the first time in Tekoh's appeal the propriety of a ruling on a single evidentiary issue applying only to the facts of this case—our court was correct to avoid a wasteful use of our en banc resources.

Respectfully, I concur in the denial of rehearing en banc.

COLLINS, Circuit Judge, with whom CALLAHAN, IKUTA, BENNETT, R. NELSON, BADE, LEE, BRESS, BUMATAY, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Having just been reversed by the Supreme Court on other grounds, the panel majority on remand has issued yet another plainly erroneous published decision—one that defies settled precedent, creates a circuit split, and will have a substantial disruptive effect on the administration of justice in this circuit. We should have reheard this case en banc.

According to the panel majority's opinion, in conducting a civil trial concerning a § 1983 claim alleging that a police officer coerced the plaintiff's confession, the district court was *required* to admit expert testimony concerning the potential coercive effect of commonly used interrogation techniques. Expert testimony is needed, the majority concluded, so that the jury can understand the coercive effect of "minimization tactics" (*i.e.*, blame-reducing excuses for the suspected crime that are suggested by the interrogator) and "false evidence ploy[s]" (*i.e.*, bluffing by the

interrogator as to what evidence of guilt the police have), as well as "why just asking questions can be coercive." *Tekoh v. County of Los Angeles*, 75 F.4th 1264, 1266 (9th Cir. 2023). In holding that the mere use of such common techniques triggers a need to admit such expert testimony, the panel majority's decision (1) contravenes our caselaw concerning the deference afforded to district judges on evidentiary questions as well as our caselaw supporting the exclusion of expert testimony offered to bolster credibility; (2) could be read as effectively creating a *per se* rule requiring the admission of such testimony in all cases alleging a coerced confession; and (3) creates a split of authority. Although the concurrence in the denial of rehearing attempts to downplay the significance of the panel majority's published opinion—which the panel majority notably declines to amend—that concurrence only serves to underscore how problematic that opinion is in the first place. I dissent from our failure to rehear this case en banc.

## I

### A

In 2014, Tekoh, a citizen of Cameroon, was working as a nursing assistant at a Los Angeles hospital "[w]hen a female patient accused him of sexually assaulting her." *Vega v. Tekoh*, 597 U.S. 134, 138 (2022). Hospital staff contacted the Los Angeles County Sheriff's Department, which dispatched Deputy Carlos Vega to the hospital. *Id*. Vega questioned Tekoh at the hospital and obtained a signed written statement from Tekoh confessing that he had touched the patient's vagina. However, Tekoh's and Vega's accounts of that interview differ sharply.

Tekoh testified that he never asked to speak privately with Vega, and that Vega instead took him to a soundproof

MRI room after dismissing the two nurses who were with Tekoh. According to Tekoh, once inside the room, Vega blocked him from exiting and began accusing him of sexually assaulting the complainant. This went on, Tekoh said, for about 35 minutes, at which point Vega falsely claimed that they had a video of the sexual assault. Tekoh said that he felt relieved when he heard that, because he thought that a video would prove his innocence. Tekoh said that, as a result, he let out a chuckle, which got Vega angry. When Vega ignored Tekoh's requests to speak to a supervisor or a lawyer, Tekoh claimed that he tried to leave but was physically blocked from exiting by Vega. According to Tekoh:

> I made one or two steps, and he rushed at me and stepped on my toes, put his hand on his gun and said, "Mr. Jungle N----- trying to be smart with me. You make any funny move, you're going to regret it. I'm about to put your black ass where it belongs, about to hand you over to deportation services, and you and your entire family will be rounded up and sent back to the jungle." He said, "Trust me, I have the power to do it."

Tekoh testified that Vega gave him a piece of paper and pen and told him to write down what he had done to the patient and that he should "start by showing the remorse to the judge." Tekoh said that, after he hesitated, Vega told him that "he wasn't joking and he put his hand on his gun." At that point, Tekoh testified, he "was ready to write whatever [Vega] wanted." According to Tekoh, Vega "kept dictating," and Tekoh "was writing" what he was told. It was only after Tekoh signed the written statement that a

second officer, Sergeant Dennis Stangeland, entered the room.

In his trial testimony, Deputy Vega denied every material allegation Tekoh made about Vega's allegedly coercive behavior.  According to Vega, when he began questioning Tekoh at the hospital in the presence of others, it was Tekoh who asked if they could move to a room where they could speak privately, and they then moved to the MRI room.  Once in the room, Vega said, he did not yell at Tekoh because Tekoh's general demeanor was "humble."  Vega specifically denied that he had used "any sort of racial slur."  Vega also stated that, for safety reasons, he left the door to the MRI room ajar.  Vega said that he decided that he wanted another officer there, and so he called his sergeant to come.  After doing so, Vega said that he gave Tekoh a "piece of paper" and asked him to "write what happened while I get my sergeant and we can ask you a couple of questions."  He denied that he threatened Tekoh and he also denied dictating Tekoh's statement.  Vega said that Tekoh was "cooperative" and seemed to be "feeling guilty."  Vega stated that Tekoh did not try to leave; that Vega never stepped on Tekoh's toes; and that Tekoh "just continued to write the letter" while they waited for Sergeant Stangeland.  Vega further stated that Tekoh never requested to talk to a lawyer.  Vega also specifically denied threatening to have Tekoh deported.  He also denied ever placing his hand on his gun.  After Sergeant Stangeland arrived, Vega said, they began questioning him by using an "open-ended question" to "give[] him a chance to explain himself."

Sergeant Stangeland testified that, when he arrived, Tekoh "didn't seem agitated or distraught" but "appeared to be calm and appeared to be prepared to talk to both of us."  When asked to tell what happened, Stangeland said, Tekoh

admitted "that he had touched [the patient], the outer portion of her vagina," but "he was adamant on insisting that his fingers never actually penetrated her vaginal opening." Stangeland said that the interview only "lasted five to ten minutes." At the conclusion, Stangeland stated, they asked Tekoh to "return to writing his statement."

## B

Tekoh was arrested and charged in California state court, where, after his first trial resulted in a mistrial, he was retried and acquitted. *Vega*, 597 U.S. at 139. Tekoh then sued Vega, Stangeland, and the County of Los Angeles under 42 U.S.C. § 1983, alleging that Vega coerced him into writing a false confession in violation of *Miranda* and his Fifth Amendment right against self-incrimination. Vega and Stangeland prevailed at the first trial, but the district court granted a new trial against Vega after concluding that it had given an improper jury instruction. 597 U.S. at 139. At the retrial against Vega only, the jury again "found in Vega's favor, and Tekoh appealed." *Id*. at 140. The panel "reversed, holding that the 'use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a § 1983 claim' against the officer who obtained the statement." *Id*. (quoting *Tekoh v. County of Los Angeles*, 985 F.3d 713, 722 (9th Cir. 2021)). The Supreme Court granted certiorari and reversed. Specifically, the Court held that "a violation of the *Miranda* rules" does not "provide[] a basis for a claim under § 1983." *Id*. at 141. The Court remanded for further proceedings. *Id*. at 152.

On remand, the panel, by a divided vote, again reversed the defense verdict, but this time based on an evidentiary issue that the panel had previously found unnecessary to

decide. *See Tekoh v. County of Los Angeles*, 75 F.4th 1264 (9th Cir. 2023).

Before the first trial, Defendants filed a motion in limine to exclude Plaintiff's expert on coerced confessions, Dr. Iris Blandón-Gitlin.  Dr. Blandón-Gitlin was to testify that Plaintiff's written confession was coerced, "assuming the veracity of Mr. Tekoh's account of events."  The district court concluded that, in light of that latter feature of Dr. Blandón-Gitlin's proffered testimony, that testimony would "not [be] particularly helpful," and would be "time-consuming and potentially confusing."  As the court explained:

> [T]he main opinion in her report, is that, quote, "Assuming the veracity of Mr. Tekoh's account of events, his written confession was coerced and highly unreliable."  Again, you don't need an expert for that.  If the jury buys Mr. Tekoh's version of events, then obviously the confession was coerced and cannot be used.  And so I don't see why we need an expert for that.
>
> . . .
>
> So I don't see why in this particular situation you need an expert, because in fact, according to the plaintiff's version of events that Dr. Blandon needs to assume to make her conclusion, the jury is going to have to find that Vega threatened Mr. Tekoh both physically and verbally, threatened to turn him and his family over to the authorities for deportations, put a piece of paper in front of

> him, and after making threatening gestures with the hand on the gun, ordered him to write what Vega told him. If the jury believes that, you don't think the jury can find coercion without the testimony of an expert witness?

Finally, the court also expressed its concern that allowing Dr. Blandón-Gitlin's testimony would be an improper attempt to "use the expert to bolster [Tekoh's] credibility."

After the first jury rendered a defense verdict, Tekoh moved for a new trial on the ground that, *inter alia*, Dr. Blandón-Gitlin's testimony had been improperly excluded. The district court rejected this particular ground in a written order. Summarizing its ruling, the court stated:

> This Court found that her opinion was unnecessary and problematic because: (1) if the jury believed Mr. Tekoh's version of the events, his confession was clearly coerced and highly unreliable and her opinion added nothing of substance, (2) Plaintiff appeared to be trying to use Dr. Blandon-Gitlin to simply vouch for his version of the events, but she was not a percipient witness, and (3) her report included studies and contentions which were irrelevant to the case. Plaintiff here testified that Defendant Vega browbeat him both physically and verbally, threatened to deport not only him but also his family, used racial epithets, denied him access to counsel, lied to him regarding the evidence against him, and put a piece of

paper in front of him and forced him to write a confession which Vega dictated. A reasonable juror would not need the assistance of a person with specialized knowledge to understand that those conditions, if true, would give rise to a false and coerced confession.

Over a dissent from Judge Miller, the panel majority reversed, holding that the district court abused its discretion in excluding Dr. Blandón-Gitlin's testimony. In its brief opinion, the panel majority began by quoting this court's prior observation that "[w]hether testimony is helpful within the meaning of Rule 702 is in essence a relevance inquiry." 75 F.4th at 1265 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002)). The majority then held that "Dr. Blandón-Gitlin's testimony was relevant to Tekoh's case, as she would have opined on how the text of confessions can indicate classic symptoms of coercion, and would have explained to the jury how Deputy Vega's tactics could elicit false confessions." *Id*. at 1265–66. "Because false confessions are an issue beyond the common knowledge of the average layperson, 'jurors would have been better equipped to evaluate [Tekoh's] credibility and the confession itself had they known of the identified traits of stress-compliant confession and been able to compare them to [his] testimony.'" *Id*. at 1266 (quoting *Lunbery v. Hornbeak*, 605 F.3d 754, 765 (9th Cir. 2010) (Hawkins, J., concurring)).

## II

The panel majority's decision is deeply flawed in multiple respects. First, the majority blatantly disregards the abuse-of-discretion standard of review and provides a

plainly erroneous explanation for rejecting the district court's concern that the proposed expert testimony would have effectively vouched for Tekoh's credibility. Second, the panel majority's holding that the proffered expert testimony in this case *must* be admitted under Rule 702 to help jurors understand "why just asking questions can be coercive" could be read as effectively establishing a *per se* rule requiring admission of such testimony in false confession cases. 75 F.4th at 1266. And third, the panel majority's published decision directly conflicts with *United States v. Benally*, 541 F.3d 990 (10th Cir. 2008), and stands as an extreme outlier against the overwhelming body of appellate precedent from the federal and state courts that has repeatedly upheld exclusion of such testimony.

## A

As discussed above, the district court summarized as follows its reasons for excluding Dr. Blandón-Gitlin's testimony:

> (1) if the jury believed Mr. Tekoh's version of the events, his confession was clearly coerced and highly unreliable and her opinion added nothing of substance, (2) Plaintiff appeared to be trying to use Dr. Blandon-Gitlin to simply vouch for his version of the events, but she was not a percipient witness, and (3) her report included studies and contentions which were irrelevant to the case.

Under well-settled law, the district court did not err in excluding the proffered testimony on these three grounds.

**1**

The district court's first rationale is unassailable under the applicable deferential standard of review. The two participants in the key portion of the interrogation—Tekoh and Deputy Vega—provided radically different versions of what occurred. Tekoh said that Vega physically blocked him from trying to leave, stepped on Tekoh's toes, ignored his request to speak to a lawyer, called him racial epithets, threatened him and his family with deportation, threateningly put his hand on his gun, and then dictated the false confession that Tekoh wrote down. Vega denied every single one of those allegations. Given that Dr. Blandón-Gitlin's expert testimony was expressly based on "assuming the veracity of Mr. Tekoh's accounts of events," it was eminently reasonable for the district court to conclude that her testimony would not be "helpful" and would instead be "time-consuming and potentially confusing." As Judge Miller explained in dissent, the district court *permissibly* concluded that—if Tekoh's version of the interrogation was true, as Dr. Blandón-Gitlin assumed—then the coercion would be so obvious that it would "not take an expert to see how that would have been coercive." *See Tekoh*, 75 F.4th at 1267 (Miller, J., dissenting).

The panel majority's opinion nonetheless held that expert testimony was necessary to "help the jury better understand coerced confessions, *including why just asking questions can be coercive*, issues that are beyond a layperson's understanding and not necessarily obvious, even in these circumstances." *Tekoh*, 75 F.4th at 1266 (emphasis added). I am aware of no precedent that endorses the majority's extraordinary view that a district court abuses its discretion by excluding, in a coerced confession case, expert

testimony about "why just asking questions can be coercive."

The concurrence in the denial of rehearing—which is joined by both members of the panel majority as well as by Judge Gould—offers two new grounds for concluding that the district court erred here, but neither of them withstands scrutiny. First, the concurrence says that the district court "*ignored* the possibility that the jury could find Tekoh credible but not find that Deputy Vega's conduct amounted to coercion." *See* Concur. at 11 (emphasis added). But the district court did not "ignore" that possibility; it expressly *rejected* it as implausible, and that judgment was eminently reasonable. The panel majority would apparently have weighed things differently, but under the abuse of discretion standard, "we may not simply substitute our view for that of the district court." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Second, the concurrence states that the district court "ignored the possibility that the jury could find Tekoh only *partially* credible—that Deputy Vega used racial epithets but never put his hand on his gun or threatened Tekoh with deportation, for example, such that the isolated conduct did not amount to coercion." *See* Concur. at 11. To the extent that the district court "ignored" the possibility of such a mix-and-match approach to resolving the sharp credibility dispute between Tekoh and Vega, that is unsurprising, because Tekoh did not raise such an argument in the district court. The district court did not abuse its discretion by failing to address speculative hypotheticals conjured by the panel majority that were not argued by Tekoh. And even if such an argument had been squarely raised, it would still not have been an abuse of discretion for the district court to conclude that Dr. Blandón-Gitlin's testimony would not be sufficiently helpful to the

jury to outweigh the potential for unfair prejudice and undue consumption of time.

## 2

The panel majority further erred in rejecting the district court's additional reasonable conclusion that Dr. Blandón-Gitlin's testimony improperly sought to bolster Tekoh's credibility.  Our caselaw has long held that "[e]xpert testimony may not appropriately be used to buttress credibility." *See United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) (citation omitted); *see also id.* (stating that an "expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility" (citation omitted)); *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility."); *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (stating that expert testimony on witness credibility improperly invades the province of the jury), *overruled on other grounds*, *United States v. Morales*, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997) (en banc).  The district court's reliance on this further ground for excluding Dr. Blandón-Gitlin's testimony is likewise unassailable under the applicable deferential standard of review.  *See Tekoh*, 75 F.4th at 1267 (Miller, J., dissenting) (explaining that the district court permissibly concluded that "Dr. Blandón-Gitlin's testimony would have violated that principle").

On this score, one need look no further than Dr. Blandón-Gitlin's own expert report to see that the district court had solid grounds to rule as it did.  Although simultaneously asserting that she would assume the truth of Tekoh's version

of events, Dr. Blandón-Gitlin's report began her case-specific analysis of coercion by opining explicitly on how she would resolve the credibility contest between Tekoh and Vega: "First, Deputy Vega's account of the circumstances in which he met and initially interacted with Mr. Tekoh is significantly different from the various witnesses' accounts, including Mr. Tekoh himself." She then devoted three paragraphs of her report to discussing the testimony of the various witnesses and explaining why she would conclude that the "overwhelming evidence from the multiple witnesses' core accounts suggests that Deputy Vega's account of events about his initial encounter and movement to the [MRI] reading room may have been incorrect"; that "Deputy Vega's accounts of *other* critical events were misreported"; that Vega gave inconsistent testimony at the preliminary hearing in state court; and that "it is important to critically evaluate the reliability of Deputy Vega's account of events."

In holding that the district court abused its discretion in excluding this testimony, the panel majority's opinion asserts that it would not have "impermissibly vouch[ed] for or buttress[ed] Tekoh's credibility," but would merely have "corroborate[d]" it. 75 F.4th at 1266; *see also* Concur. at 13 (arguing that Dr. Blandón-Gitlin's testimony would not have bolstered Teko's "credibility," but would instead only have supported "the facts at the heart of Tekoh's legal claim"). I am at a loss to understand this illusory line between corroborating Tekoh's claims about the facts of his interrogation and bolstering the credibility of his claims about those facts. This majority opinion's elusive distinction will be a source of substantial confusion in future cases in this court and in the district courts. And even if there were such a line between vouching and corroborating, the district

court acted well within its discretion in concluding that Dr. Blandón-Gitlin's testimony was on the impermissible vouching side.

The concurrence further confirms the opinion's error on this score. The concurrence complains that the district court's exclusion of Dr. Blandón-Gitlin's testimony left Tekoh in a situation in which it "was Tekoh's subjective experience against the word of a law enforcement deputy." *See* Concur. at 11–12. This candid comment simply highlights that the primary function of Dr. Blandón-Gitlin's testimony would have been to bolster Tekoh's testimony in the crucial credibility contest between Tekoh and Vega. That, in turn, underscores the panel majority's error in rejecting the district court's reasonable conclusion that Dr. Blandón-Gitlin's testimony violated the settled principle that "[e]xpert testimony may not appropriately be used to buttress credibility." *Rivera*, 43 F.3d at 1295 (citation omitted).

## 3

The record also amply supports the district court's third conclusion—namely, that Dr. Blandón-Gitlin's "report included studies and contentions which were irrelevant to the case." In particular, Dr. Blandón-Gitlin's testimony about minimization tactics did not line up with Tekoh's own version of events. Dr. Blandón-Gitlin opined that, because Tekoh's statement included "apologies and excuses," this was evidence that he had been influenced by "minimizing tactics" that are "typically used by interrogators to downplay the offense and influence suspects to confess." As Dr. Blandón-Gitlin explained, "minimization tactics" occur when an interrogator suggests "moral justifications or face-saving excuses" that would "explain why the person may

have committed the act," thereby "imply[ing] to the suspect that providing a confession or admission (perhaps with a moral justification) is the best way to get out of the situation." But here, of course, Tekoh never claimed that Vega tried to coax him by offering him minimizing excuses for what had happened; his claim was that Vega dictated the confession verbatim while holding his hand on his gun.

Although there was thus no factual basis in either Tekoh's or Vega's testimony for concluding that Vega used "minimization tactics" in the interrogation of Tekoh, the panel majority's opinion nonetheless inexplicably reverses the district court on this score. According to the panel majority, Dr. Blandón-Gitlin's testimony was "relevant" because it would have assisted the jury in understanding how "Deputy Vega utilized minimization tactics—classic coercion—to elicit incriminating admissions." *Tekoh*, 75 F.4th at 1266. This reasoning is simply divorced from the factual record of this case and flagrantly disregards the applicable deferential standard of review.

Finally, it must be noted that, in discussing this issue, the panel majority's opinion makes the drive-by statement that "minimization tactics" constitute "classic coercion." *Id*. This startling holding is based on no authority at all, but it now arguably prohibits their use in this circuit. That broad and unsupported statement provides yet another reason why we should have reviewed this case en banc.

In short, the panel majority's remarkable holding that the district court was *required* to admit the sort of testimony at issue here is clearly wrong and squarely contrary to settled precedent.

**B**

As Judge Miller's dissent persuasively notes, the panel majority's terse explanation for its finding of an abuse of discretion means that the majority's opinion could be read as effectively *requiring* the admission of such coerced-confession expert testimony in all such cases. *See Tekoh*, 75 F.4th at 1267 (Miller, J., dissenting) (noting that the panel majority's opinion will have broad applicability because "*every* situation is theoretically susceptible to some sort of expert analysis" about such "other, subtler pressures" (emphasis added)).

The concurrence nonetheless insists that the panel majority's opinion merely reflects a carefully circumscribed analysis that is "narrowly based on the circumstances of Tekoh's case." *See* Concur. at 9. This contention is hard to square with the opinion that the panel majority wrote. The potential breadth of that decision is apparent from the starkly simplistic nature of its holding. In reversing the district court's decision "excluding Dr. Blandón-Gitlin's testimony on coerced confessions," the panel majority's opinion holds that the "jury could benefit from Dr. Blandón-Gitlin's expert knowledge about the science of coercive interrogation tactics, which Deputy Vega employed here, and how they could elicit false confessions," and that her testimony "would help the jury better understand coerced confessions, including why just asking questions can be coercive." 75 F.4th at 1265–66. But the only "tactics" that the majority's opinion says justify admitting this expert testimony are "minimization tactics," a "false evidence ploy," and "just asking questions." *Id.* Because this holding relies on very generally described and widely used interrogation

techniques,[1] it will be difficult, if not impossible, to distinguish this opinion in future coerced confession cases.

The concurrence also remarkably suggests that the panel majority's opinion may even leave open the possibility that the district court on remand in this case could *completely* exclude Dr. Blandón-Gitlin's testimony. *See* Concur. at 10. This revisionism is even harder to square with the panel majority's unamended opinion, which rejects all of the many grounds that the district court gave for excluding that testimony. Under the panel majority's opinion, the only issue under Rule 702 was whether Dr. Blandón-Gitlin's testimony "would help the trier of fact to understand the evidence or to determine a fact in issue," *see* FED. R. EVID. 702(a); *see also Tekoh*, 75 F.4th at 1265 n.1, and the majority proceeds to hold that Dr. Blandón-Gitlin's testimony *does* satisfy Rule 702(a). The opinion also concludes that much of that testimony is relevant; that Dr. Blandón-Gitlin's opinions had an adequate foundation in the testimony about the facts of Tekoh's interrogation; and that the testimony does not violate the rule against using expert testimony to bolster credibility. *See Tekoh*, 75 F.4th at 1265–66. Given these holdings, it is hard to see what ground the opinion leaves open for remand in this case that could even arguably result in full exclusion of that testimony. The concurrence suggests that the district court will still retain the authority, on remand, to evaluate Dr. Blandón-Gitlin's testimony under Rule 403, but at best that would only give the district court

---

[1] *See*, *e.g.*, Richard A. Leo, *Inside the Interrogation Room*, 86 J. CRIM. L. & CRIMINOLOGY 266, 278 table 5 (1996) (finding, in a study of interrogation techniques in three cities, that the tactic of "[o]ffer[ing] moral justifications/psychological excuses" was used in 34% of cases and that "[c]onfront[ing] suspect with false evidence of guilt" was used in 30% of cases).

authority, on remand, to trim that testimony around the edges. In the ruling the panel majority reverses, the district court specifically excluded Dr. Blandón-Gitlin's testimony on the grounds that, *inter alia*, it was "not particularly helpful" and would be "time-consuming and potentially confusing." That is a classic Rule 403 analysis, but the panel majority's opinion reverses anyway.

Accordingly, the opinion, as written, clearly does *not* allow the district court in *this* case to re-exclude the entirety of Dr. Blandón-Gitlin's testimony on remand. The concurrence's insistence that its opinion "does nothing of the sort," *see* Concur. at 9, would have more force if the panel majority had amended its opinion rather than insist that that opinion somehow says something that it plainly does not. And given the difficulty in reconciling the concurrence's statements with the broad language of the opinion, the concurrence is poorly positioned to fault this dissent for expressing an (understandable) measure of uncertainty as to exactly how much coerced-confession expert testimony will be required to be admitted in future cases as a result of the opinion in this case. But what is certain is that the opinion wrongly rejects meritorious reasons for excluding such testimony, and it does so on broadly phrased grounds that will make it substantially—and unjustifiably—harder to exclude such testimony in future cases. That alone warranted rehearing en banc.

## C

The panel majority's flawed decision also creates a split with the Tenth Circuit's decision in *United States v. Benally*, 541 F.3d 990 (10th Cir. 2008).

In *Benally*, the defendant appealed his child sex abuse conviction, arguing that the district court improperly

excluded his proffered expert witness on false confessions. *Id*. at 993. The expert would have testified concerning the frequency of false confessions and the interrogation techniques that cause them, testimony that would have borne *less* directly on the interrogee's credibility than Dr. Blandón-Gitlin's would have here. *Id*. at 993–94. The Tenth Circuit found no abuse of discretion, largely due to what it considered to be the district court's permissible concern that the "import of her expert testimony" would be to bolster the interrogee's credibility. *Id*. at 995. Notably, the Tenth Circuit reached that conclusion even though the expert's testimony there would have been confined to these general points and would *not* have "specifically discuss[ed] [Benally] or the circumstances surrounding his confession in her testimony." *Id*. at 995. As *Benally* noted, that limitation on the proffered testimony was an effort to "respond[] to the concern expressed" in a prior Tenth Circuit decision "that 'a proposed expert's opinion that a witness is lying or telling the truth might be inadmissible . . . because the opinion exceeds the scope of the expert's specialized knowledge.'" *Id*. (quoting *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)).

*Benally* thus recognized that, under *Adams*, the inclusion of a case-specific opinion about whether *this* defendant falsely confessed would be problematic—which is the exact opposite of what the panel majority held here. The concurrence is therefore wrong in contending that *Benally* is distinguishable on the ground that the expert there would not have offered such case-specific opinion testimony. *See* Concur. at 14 n.4. Nothing in *Benally* supports the concurrence's insinuation that, had the expert in *Benally* just taken that extra step of applying her opinions about the effect of specific techniques to Benally's case, the result would be

different.  *Benally*'s reliance on *Adams* confirms that the opposite is true.  Moreover, the Tenth Circuit noted that, even without this sort of case-specific testimony that was criticized in *Adams*, the remaining proffered testimony about the coercive effect of particular interrogation techniques in *Benally* did *not* "address the other problems associated with this type of testimony that were identified in *Adams*," namely, that such expert testimony encroaches on the jury's role by "vouch[ing] for the credibility of another witness" and that the "testimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403." *Id*. (quoting *Adams*, 271 F.3d at 1245).  That reasoning and result dovetail well with the district court's reasoning here, thereby underscoring the circuit split created by the panel majority's decision.  The concurrence has no answer to *Benally*'s analysis on this score.

The extent to which the panel majority's decision here is an extreme outlier is further confirmed by the substantial body of additional precedent from other federal and state courts across the country that have repeatedly upheld the exclusion of comparable expert testimony under similarly worded rules of evidence.  *See*, *e.g.*, *United States v. Phillipos*, 849 F.3d 464, 471–72 (1st Cir. 2017) (holding that the district court did not abuse its discretion in excluding, under Rule 702, testimony of a proposed expert on false confessions) (collecting cases); *Commonwealth v. Alicia*, 92 A.3d 753, 763–64 (Pa. 2014) (surveying the caselaw on "the admissibility of expert testimony concerning false confessions" and "conclud[ing], in agreement with the Tenth Circuit Court's decision in *Benally*" that such expert testimony "constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility"); *State v.*

*Rafay*, 285 P.3d 83, 112–13 (Wash. Ct. App. 2012) ("Under the circumstances, the trial court's determination that [the confessions expert's] proposed testimony would not be helpful and would invade the province of the jury was at least debatable. The trial court's exclusion of the proposed testimony was therefore not an abuse of discretion."); *People v. Kowalski*, 821 N.W.2d 14, 32 (Mich. 2012) (holding that the lower courts had not abused their discretion in excluding expert "testimony pertaining to the literature of false confessions," as well as additional expert "testimony indicating that defendant's confession was consistent with this literature"); *State v. Cobb*, 43 P.3d 855, 861, 869 (Kan. 2002) (holding, in State's cross-appeal, that the trial court erred in admitting proffered expert testimony "regarding the tendency of certain police interrogation techniques to produce false confessions," and concluding that the "type of testimony given by [the proposed expert] in this case invades the province of the jury"); *State v. Davis*, 32 S.W.3d 603, 608–09 (Mo. Ct. App. 2000) (finding no abuse of discretion in the exclusion of such false-confession expert testimony, holding that "the offer of proof invaded the jury's province to make credibility determinations"); *cf. also Brown v. Horell*, 644 F.3d 969, 982–83 (9th Cir. 2011) (holding, under AEDPA, that the state court reasonably concluded that the exclusion of testimony from a false-confessions expert did not violate the constitutional right to present a complete defense).

In addition, there does not appear to be any prior *civil* case in which an appellate court has held that such expert testimony must be admitted. On that score, the panel majority's decision apparently stands alone.

## III

Lastly, I wish briefly to address the panel majority's peculiar apologia, in the concurrence, for its published opinion in this case. The concurrence notes that the panel originally issued its decision in this case as an unpublished memorandum disposition. That, however, was a clear violation of Ninth Circuit Rule 36-2(f), which requires publication of any "written, reasoned disposition" that is "a disposition of a case following a reversal or remand by the United States Supreme Court."[2] As the concurrence notes, the panel majority subsequently "designated the previously-filed memorandum disposition for publication exactly as written—without elaborating upon the facts or law that would fully constitute a true opinion." *See* Concur. at 9. But nothing in Rule 36-2(f) forbids a panel from *amending* an opinion, as appropriate, so that (in the panel majority's words) it "would fully constitute a true opinion" when it is published in compliance with that rule. The choice to leave the published disposition in this case "exactly as written"— with all its flaws—was the panel majority's to make. If anything, that consideration provides a further reason why we should have reconsidered this matter en banc.

\*          \*          \*

For all of these reasons, I respectfully dissent from the denial of rehearing en banc in this case.

---

[2] The panel majority's culling of cases in which that rule has previously been violated may supply grounds for perhaps amending that rule in the future, but they provide no basis for declining to follow that rule here. In any event, given the extent to which the panel majority's decision in this case departs from settled law, that decision amply meets the ordinary criteria for publication. *See* NINTH CIR. R. 36-2(a) (publication is warranted if the decision "alters" or "modifies" a "rule of federal law").